**[Cite as *In re L.A.*, 2024-Ohio-3436.]**

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN RE: L.A. (D.O.B.11/10/22) | : | JUDGES: |
| L.A. (D.O.B. 1/15/22 ) | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J, |
|  | : | Hon. John W. Wise, J. |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | Case No.    2024CA00064 |
|  | : |             2024CA00065 |
|  | : |  |
|  | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of Common Pleas, Juvenile Division, Case No 2022JCV00618 & 2022JCV 01339

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     September 6, 2024

APPEARANCES:

For Plaintiff-Appellee

BRANDON J. WALTENBAUGH
Stark County JFS
402 2nd St. S.E.
Canton, OH 44702

For Defendant-Appellant

RICHARD D. HIXSON
3808 James Court, Ste. 2
Zanesville, OH 43701

DIANE QUAY COMPTON
Stark County JFS
221 3rd Street S.E.
Canton, OH 44702

*Gwin, P.J.*

{¶1} In this permanent custody case, Father contends that he was denied due process because the permanent custody hearing went forward after he voluntarily absented himself from the hearing, he was denied effective assistance of counsel because his attorney did not move for a continuance after Father voluntarily absented himself from the hearing, and the trial judge's findings that Father's parental rights should be terminated was against the sufficiency and weight of the evidence.

{¶2} We find the Father was actively responsible for what he now claims to be an error, and because his attorney participated in the hearing and cross-examined the witnesses, Father cannot claim either error or ineffective assistance of counsel, nor can he contend that he was denied due process of law. We further find the trial judge's decision that one of the children had been in the temporary custody of SCJFS for over twelve months of a consecutive 22-month period; that Father had failed to remedy the issues that caused the initial removal, and, therefore, the children could not be placed with him within a reasonable time or should not be placed with him, was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence. We further find that the trial judge's decision that permanent custody to SCJFS was in the children's best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶3} We therefore affirm the decision of the Stark County Court of Common Pleas, Family Court Division.

*Facts and Procedural History*

{¶4} On February 24, 2022, Stark County Job and Family Services ("SCJFS") filed a complaint in case 2022JCV00188 alleging the dependency, neglect, and/or abuse of L.A. (hereinafter "L.A. 1") (b. 1/15/2022). 1 T. at 10-11. Appellant is the father of the child. Tr. at 8.

{¶5} On the same day, the trial court held an emergency shelter care hearing in case 2022JCV00188 and found that probable cause existed for the issuance of emergency orders, SCJFS had engaged in reasonable efforts to prevent the need for the removal of the child, continued residence of the child with Father was contrary to the child's best interest, approved an adopted the pre-adjudicatory orders requested by SCJFS, and granted temporary custody of the child to SCJFS.

{¶6} The complaint in 2022JCV00188 was dismissed and refiled on May 31, 2022 in 22JVC00618 due to statutory time constraints. T. at 11.

{¶7} On August 23, 2022, the trial court found L.A. 1 to be abused and placed the child into the temporary custody of SCJFS. T. at 11. The trial court approved and adopted the initial case plan, found that SCJFS had engaged in reasonable efforts to prevent the need for the removal of the child, continued residence of the child with Father was contrary to the child's best interest, and SCJFS had made intensive efforts to identify and engage appropriate and willing kinship caregivers for the child. T. at 11.

{¶8} On November 16, 2022, SCJFS filed a complaint in 2022JVC01339 alleging the dependency and/or neglect of L.A. (hereinafter "L.A. 2") (b. 11/10/2022). T. at 10-12. Appellant is the father of the child. T. at 8.

{¶9} On November 17, 2022, the trial court held an emergency shelter care

hearing and found that probable cause existed for the issuance of the emergency orders, SCJFS had engaged in reasonable efforts to prevent the need for the removal of the child, continued residence of the child with Father was contrary to the child's best interest, approved and adopted the pre-adjudicatory orders requested by SCJFS, and granted temporary custody of the child to SCJFS.

{¶10} On December 1, 2022, SCJFS filed an amended complaint to correct the child's last name.

{¶11} On January 18, 2023, the trial court found L.A. 2 to be dependent and placed the child into the temporary custody of SCJFS. T. at 11. The trial court approved and adopted the initial case plan, found that SCJFS had engaged in reasonable efforts to prevent the need for the removal of the child, continued residence of the child with Father was contrary to the child's best interest, and SCJFS had made intensive efforts to identify and engage appropriate and willing kinship caregivers for the child. T. at 11.

{¶12} The trial court conducted review hearings every 6 months and found SCJFS had made reasonable efforts to prevent continued removal from the home.

{¶13} On October 17, 2023, SCJFS filed motions seeking permanent custody of the children. T. at 3.

{¶14} On January 11, 2024, the trial court again reviewed the case. The trial court approved and adopted the case plan, found that SCJFS had made reasonable efforts to finalize the permanency planning in effect, SCJFS had made intensive efforts to identify and engage appropriate and willing kinship caregivers for the child, and ordered status quo. The trial court also found that there were no compelling reasons to preclude a request for permanent custody.

{¶15} On April 8, 2024, the Guardian ad Litem for the children filed her final report.

{¶16} On April 18, 2024, the permanent custody evidentiary hearing took place. The trial was scheduled to begin at 1:00 pm. T. at 8. Father was properly served with the motions, was present in the courthouse, refused to speak with his attorney, and told counsel to withdraw from the case. T. at 3, 9.

{¶17} The trial court started the hearing at 1:39 pm. Father was outside of the courtroom. T. at 3, 9. Mother of the children stipulated to the motions before any evidence was presented regarding Father. T. at 3-9. At 1:51 pm, the trial judge was ready to hear evidence regarding Father. T. at 8. Father's trial counsel stated that she was "unable to find him... we didn't see him leave the building, but he is not in the lobby and the deputy is looking for him." Id. Father's trial counsel, at the request of Father, made a motion to withdraw from the case which was denied by the trial judge. T. at 9. Father was not seen again but was represented by counsel throughout the proceeding. Father's counsel cross-examined the two witnesses presented by SCJFS. T. at 21-23; 28-29.

{¶18} Caseworker Kelli Williams testified for SCJFS. She testified that she is employed by SCJFS and was the prior caseworker assigned to the case. T. at 10. L.A. 1 was removed from Father's custody on February 24, 2022, found abused on August 23, 2022, and placed into the temporary custody of SCJFS. T. at 11-12. L.A. 2 was removed from Father's custody on November 16, 2022, found dependent on January 28, 2023, and placed into the temporary custody of SCJFS. T. at 12. The children have remained in the temporary custody of SCJFS throughout the cases. T. at 12. The cases were reviewed semiannually by the trial court, where it found that SCJFS was making

reasonable efforts and approved and adopted the case plan. Id. at 12-13. The caseworker testified that the case plan was the same for both cases. T. at 13.

**{¶19}** Ms. Williams testified that Father's case plan consisted of completing a psychological evaluation at Melymbrosia, following all recommendations, completing a drug and alcohol assessment, following all recommendations, and complying with drug screens. T. at 13-14.

**{¶20}** Father did no services for the first several months of the case, and then did no services during his nine-month incarceration from November 2022 until August 2023. T. at 14. Father did not complete a psychological evaluation until a year and a half into the case. Id.

**{¶21}** Williams testified that the evaluation added recommendations that Father participate in domestic violence treatment due to his lengthy history of violence and inability to regulate his emotions, and that all contact between Father and the children be supervised. T. at 15.

**{¶22}** Father attended two sessions of domestic violence treatment before being terminated for noncompliance on November 29, 2023. T. at 15. Father did not engage in further domestic violence treatment. T. at 15.

**{¶23}** Ms. Williams testified that Father has a long history of methamphetamine use and relapsed shortly after his release from prison in August 2023. T. at 15. Father completed a substance abuse assessment in August 2023, and was recommended to engage in individual treatment and intensive outpatient treatment. T. at 15-16. Father attended two appointments for treatment before being terminated for noncompliance on September 14, 2023. T. at 16. Father was also using methamphetamine in October 2023

and November 2023, and then stopped submitting to drug screens. T. at 15-17. Ms. Williams testified that Father did not engage in further substance abuse treatment. T. at 15.

{¶24} Ms. Williams testified that she had made reasonable efforts to assist Father in complying with his case plan services in an effort to reunify with the children. T. at 18. She had regular contact with Father while he was in prison, she met with Father several times upon his release, she discussed his case plan services with him, SCJFS paid for the services, she arranged for video visitation with the children while Father was in prison, and she continually offered to assist Father with drug treatment. T. at 18-19.

{¶25} Ms. Williams testified that, despite her efforts, Father had not substantially complied with case plan services and had continuously and repeatedly failed to comply with case plan objectives. T. at 18-20. She testified that she did not believe an extension of time was warranted because Father took no ownership or responsibility of the issues leading to the involvement of SCJFS, blamed others, and was resistant to change. T. at 20.

{¶26} SCJFS presented testimony regarding the best interests of the children. T. at 23-29.

{¶27} Ms. Victoria Burkhart testified for SCJFS. She is employed by SCJFS as the current worker assigned to the case. T. at 23. She testified that she had reviewed the case file and shadowed Ms. Williams before taking over the case, and was aware of the history. T. at 23-24.

{¶28} SCJFS explored several family members for potential placement of the children. T. at 24. The family members were either inappropriate or declined placement of the children. T. at 24-25.

{¶29} Ms. Burkhart testified that the children were placed together in the same foster home throughout the entirety of the cases. T. at 25. The children are "very bonded" to the foster family and to each other. T. at 25. The foster family is very appropriate and tends to the needs of the children. T. at 25. The foster family is willing to adopt the children. T. at 26.

{¶30} Ms. Burkhart testified that L.A. 1 has several health issues due to in-utero drug exposure. T. at 26. She testified that he was in the NICU for "quite some time", has a chronic lung disease, has ear tubes, had his adenoids removed, and has developmental delays with his motor skills. T. at 26.

{¶31} Ms. Burkhart testified that L.A. 2 was also exposed to drugs in utero. T. at 26-27. L.A. 2 was also in the NICU and on a feeding tube early in her life, but is now "very healthy" and on target. T. at 27.

{¶32} Visitation with Father and the children contained positive and negative results. T. at 27-28. During one visit, Father left scissors on the floor in reach of the children and let L.A. 2 put plastic zip ties into her mouth. T. at 27. Father lacks basic developmental knowledge of children. T. at 27. Father would not play with the children. T. at 27. Burkhart testified that in her opinion Father was not capable of meeting the needs of the children. T. at 28.

**{¶33}** Ms. Burkhart testified that she believed permanent custody was in the best interests of the children because Father had not participated in case plan services and had not made progress with his case. T. at 28.

**{¶34}** The guardian ad litem told the trial judge that the children were doing "exceptionally well" in the foster home, adoption was in their best interests, and that any bond between Father and the children was significantly outweighed by the benefits of permanent custody. T. at 30. The foster mother told the trial judge she is willing to adopt the children. Id.

**{¶35}** The trial judge took the matter under advisement. T. at 30.

**{¶36}** On April 22, 2024, the trial judge issued his decision and findings of fact granting permanent custody of the children to SCJFS and terminating the parental rights of Father. Specifically, the trial judge found that, despite reasonable efforts by SCJFS, the children could not and should not be placed with Father within a reasonable amount of time, Father had failed to remedy the problems leading to the children's initial removal, L.A. 1 had been in the continuous temporary custody of SCJFS for 12 of 22 months, and permanent custody was in the children's best interests.

*Assignments of Error*

**{¶37}** Father raises three Assignments of Error,

**{¶38}** "I. APPELLANT'S RIGHT TO DUE PROCESS OF LAW WAS VIOLATED WHEN THE PERMANENT CUSTODY HEARING PROCEEDED AND WAS HELD IN APPELLANT'S ABSENCE, DESPITE APPELLANT'S PRESENCE AT THE HEARING PRIOR TO THE PRESENTATION OF EVIDENCE.

{¶39} *"*II. APPELLANT'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AND DUE PROCESS OF LAW WAS DENIED BY TRIAL COUNSEL'S FAILURE TO REQUEST A CONTINUANCE OF THE PERMANENT CUSTODY HEARING UNTIL APPELLANT'S PRESENCE COULD BE SECURED.

{¶40} *"*III. THE TRIAL COURT'S AWARD OF PERMANENT CUSTODY AND TERMINATION OF APPELLANT'S PARENTAL RIGHTS WAS UNSUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.*"*

I.

{¶41} In his First Assignment of Error, Father contends that a parent has a due process right to be present at a permanent custody hearing. He argues that he was not given a fair opportunity to be heard at the permanent custody trial. He suggests that the trial judge failed to protect his due process rights because the judge did not make a greater effort to locate him after he decided the leave the hearing without telling his attorney.

**Standard of Review**

{¶42} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157(1990), *quoting Stanley v. Illinois*, 405 U.S. 645 (1972). A parent's interest in the care, custody, and management of his or her child is "fundamental." Id.; *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." I*n re Smith,* 77 Ohio App.3d 1, 16 (6th Dist. 1991). Therefore, parents "must be afforded every procedural and substantive protection the law

allows." Id. An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1).

**{¶43}** To determine whether a parent was incorrectly denied the right to due process by his inability to attend a hearing, some courts have balanced: (1) the fundamental right of a parent to raise the child; (2) the risk of erroneous deprivation of that right, and the probable value of any procedural safeguards provided; and (3) the burden imposed on the government in providing additional safeguards. *In re Sprague*, 113 Ohio App.3d 274, 276 12th Dist. 1996), *citing Mathews v. Eldridge*, 424 U.S. 319 (1976).

**Issue for appellate review:** *Whether father was incorrectly denied the right to due process by his inability to attend a hearing.*

**{¶44}** In cases in which a parent has communicated with the trial court or with counsel to explain a problem attending a scheduled hearing, Ohio courts have recognized that the failure of a trial court to take extra care to ensure the parent's presence is an abuse of discretion. *See, In re Savanah M.,* 2003-Ohio-5855, ¶34(6th Dist.); *In re Q.G.,* 2007-Ohio-1312, ¶12 (8th Dist.); *In re Magnus*, 2001 WL 1045556 (10th Dist. Sept. 13, 2001).

**{¶45}** Nothing in the record suggests that Father was unable to attend the permanent custody trial. Rather, the record reflects that he was present at the start and asked his attorney to withdraw from the case. Father left the building without telling anyone. Nothing in the record suggests that Father later attempted to contact the judge or his attorney to explain his absence.

**{¶46}** In the case at bar, any potential deprivation of Father's rights was a result of his own actions. Under the doctrine of "invited error," it is well-settled that "a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *State ex rel. Smith v. O'Connor*, 71 Ohio St.3d 660, 663 (1995), *citing State ex rel. Fowler v. Smith*, 68 Ohio St.3d 357, 359 (1994). *See, also, Lester v. Leuck* (1943), 142 Ohio St. 91(1943), paragraph one of the syllabus.

**{¶47}** Father cites no caselaw that requires a trial judge to search for a party who voluntarily chooses to leave after the start of a court proceeding.

**{¶48}** Father's First Assignment of Error is overruled.

II.

**{¶49}** In his Second Assignment of Error, Father argues that he was denied effective assistance of trial counsel because counsel did not ask the judge to continue the permanent custody trial after the Father left the building after the start of the trial without telling his attorney.

**Standard of Review**

**{¶50}** Nearly fifty years ago, the Ohio Supreme Court set forth the standard to determine ineffective assistance of counsel claims under Section 10, and Section 16 of Article I, Ohio Constitution and the Sixth Amendment to the United States Constitution in *State v. Hester,* 45 Ohio St.2d 71 (1976), and thereafter slightly revised in *State v. Lytle*, 48 Ohio St.2d 391(1976), *vacated in part on other grounds*, 438 U.S. 910 (1978).

**{¶51}** "In *State v. Hester, supra*, at page 79, 341 N.E.2d 304, this Court held 'the test to be whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done.'" *State v. Jackson*, 64 Ohio St.2d 107, 110 (1980).

**{¶52}** In *State v. Lytle,* the Court held "[w]hen presenting an allegation of ineffective assistance of trial counsel to a reviewing court, an appellant must initially show a substantial violation of an essential duty by that counsel." 48 Ohio St.2d 391, 396–397. The Court further noted, "[w]hen considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." 48 Ohio St.2d 396-397. *Accord, State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989). To establish prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. *Andrus v. Texas*, 590 U.S. 806 (2020). *See*, also, *State v. Baker*, 2024-Ohio-906, ¶¶ 36-38, *appeal not allowed*, 2024-Ohio-2576, ¶¶ 36-38.

**Issue for Appellate Review:** *Whether there is a reasonable probability that, but for counsel's failure to request a continuance, the result of the proceeding would have been different.*

**{¶53}** We note that Father attempted to have his attorney withdraw from the case at the start of the proceedings. Although no continuance was ever requested, we cannot determine the probable value of continuing the hearing so Father could be present because he did not demonstrate an interest in attending the hearing or show he would have made himself available for the hearing had it been continued. *In re Magnus*, 2001 WL 1045556 (10th Dist. Sept. 13, 2001). Noticeably absent from the trial record or the

appellate record is any explanation as to why Father decided to leave once the permanent custody hearing began. Counsel remained at the hearing and cross-examined the state's witnesses. Father's own failure to appear and avail himself of the opportunity to prepare and present his defense to the allegations brought by SCJFS was not the result of a lack of due process but, rather, a conscious choice on his part to leave and to not tell his attorney, or the trial judge, that he was leaving.

{¶54} Father was actively responsible for what he now claims to be an error and, thus, is precluded from arguing this before this court. *See State v. Seiber*, 56 Ohio St.3d 4, 17(1990); *In the Matter of Butler,* 1996 WL 132233 (5th Dist. Mar. 4, 1996) (mother was estopped from raising ineffective assistance of counsel argument on appeal for her counsel's withdrawal at PCC dispositional hearing when it was caused solely by mother's voluntary absence and failure to communicate with her attorney regarding her case). *In re Magnus*, 2001 WL 1045556 (10th Dist. Sept. 13, 2001).

{¶55} Apart from failing to demonstrate that his counsel's performance was deficient, Father has also not demonstrated, or even asserted, that the outcome would have been any different had his attorney presented his case differently. He does not even present this court with any examples of evidence, testimony, or witnesses that he would have desired his attorney to present or elicit. Under the circumstances of this case, we do not find that Father's trial counsel was ineffective. This argument is without merit. *In re Magnus*, 2001 WL 1045556 (10th Dist. Sept. 13, 2001).

{¶56} Father's Second Assignment of Error is overruled.

III.

**{¶57}** In his Third Assignment of Error, Father challenges the trial judge's award of permanent custody of the children to SCJFS as against both the sufficiency and the manifest weight of the evidence.

**Standard of Review**

**{¶58}** The Ohio Supreme Court has recently delineated our standard of review as follows, "the proper appellate standards of review to apply in cases involving a juvenile court's decision under R.C. 2151.414 to award permanent custody of a child and to terminate parental rights are the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards, as appropriate depending on the nature of the arguments that are presented by the parties. *In re: Z.C.,* 2023-Ohio-4703, ¶18.

*Sufficiency of the Evidence*

**{¶59}** Whether the evidence is legally sufficient to sustain a verdict is a question of law. *In re: Z.C.,* 2023-Ohio-4703, ¶13. "When applying a sufficiency-of-the-evidence standard, a court of appeals should affirm a trial court when 'the evidence is legally sufficient to support the jury verdict as a matter of law.'" *Bryan-Wollman v. Domonko*, 115 Ohio St.3d 291, 2007-Ohio-4918, 874 N.E.2d 1198, ¶ 3, *quoting Thompkins* at 386, 678 N.E.2d 541, *quoting Black's* at 1433." Id.

**{¶60}** The Ohio Supreme Court stated that where the degree of proof required to sustain an issue must be "clear and convincing," means "[t]he measures or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable

doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104 (1986); *Accord, In re: Z.C.,* 2023-Ohio-4703, ¶7. A court of appeals will examine the record to determine whether the trier of facts had sufficient evidence before it by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established. 2023-Ohio-4703, ¶8; *In re Adkins,* 2006-Ohio-431, ¶17 (5th Dist.).

*Manifest weight of the evidence*

**{¶61}** The term "'manifest weight of the evidence'. . . relates to persuasion." *Eastley v. Volkman*, 2012-Ohio-2179, ¶19. It "concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387(1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 102 at n.4 (1997)*; *State v. Martin*, 2022-Ohio-4175, ¶ 26.

**{¶62}** Weight of the evidence addresses the evidence's effect of inducing belief. *Thompkins*, at 386-387; *State v. Williams,* 2003-Ohio-4396, ¶83. When a court of appeals reverses a judgment of a trial court on the basis that the decision is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *State v. Jordan*, 2023-Ohio-3800; *Thompkins* at 387, *citing Tibbs v. Florida*, 457 U.S. 31, 42(1982) (quotation marks omitted); *State v. Wilson,* 2007-Ohio-2202, ¶25, citing *Thompkins.*

**{¶63}** In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact. *Eastley,* 2012-Ohio-2179 at ¶ 21; *In re Z.C.,* 2023-Ohio-4703, ¶ 14. "The underlying rationale of giving deference to the findings of the

trial court rests with the knowledge that the [trier of fact] is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984).

**{¶64}** When there is conflicting testimony presented at trial, a defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented. "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Seasons Coal Co., Inc* at fn. 3, *quoting* 5 Ohio Jur.3d, Appellate Review, §603, at 191-192 (1978); *In re Z.C.,* 2023-Ohio-4703, ¶14. In *Cross v. Ledford,* 161 Ohio St. 469, 477(1954), the Supreme Court further cautioned,

> The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

**{¶65}** 161 Ohio St. at 477-478. (Emphasis added).

**{¶66}** The interplay between the presumption of correctness and the ability of an appellate court to reverse a verdict based on the manifest weight of the evidence has been stated as follows, "'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'" *Seasons Coal Co.,* 10 Ohio St.3d at 80, *quoting C.E. Morris Co. v. Foley Construction Co.*, 54 Ohio St.2d 279, 280 - 281. *See, also*, *In re: Z.C.,* 2023-Ohio- 4703, ¶15; *Frankenmuth Mut. Ins. Co. v. Selz*, 6 Ohio St.3d 169, 172 (1983); *In re Sekulich,* 65 Ohio St.2d 13, 16 (1981).

**{¶67}** If a court of appeals determines that a judgment is against the manifest weight of the evidence, the proper remedy is a remand for a new trial. 2023-Ohio-4703, ¶16, citing *Eastley* at ¶ 22. However, "[r]eversal on the manifest weight of the evidence and remand for a new trial are not to be taken lightly." *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 31; *In re: Z.C.,* 2023-Ohio- 4703, ¶16.

**Requirements for Permanent Custody Awards**

**{¶68}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶69}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court

determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

**{¶70}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial judge must apply when ruling on a motion for permanent custody. In practice, the trial judge will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**Temporary Custody for at least 12 out of a consecutive 22-month period-R.C. 2151.414(B)(1)(d).**

**{¶71}** The "12 of 22" provisions set forth in R.C. 2151.413(D)(1) and R.C. 2151.414(B)(1)(d) balance the importance of reuniting a child with the child's parents against the importance of a speedy resolution of the custody of a child. *In re C.W.,* 2004-Ohio-6411, ¶22. Through the "12 of 22" provisions in the permanent-custody statutes, the legislature provides parents with 12 months to work toward reunification before an agency can institute a permanent-custody action asserting R.C. 2151.414(B)(1)(d) grounds. Id.

**{¶72}** "Before a public children-services agency or private child-placing agency can move for permanent custody of a child on R.C. 2151.414(B)(1)(d) grounds, the child must have been in the temporary custody of an agency for at least 12 months of a consecutive 22-month period." *In re: C.W.,* 2004-Ohio-6411 at paragraph one of the syllabus. When calculating this time period, the Court in *C.W.* cautioned, "the time that passes between the filing of a motion for permanent custody and the permanent-custody hearing does not count toward the 12-month period set forth in R.C. 2151.414(B)(1)(d)." 2004-Ohio-6411, ¶26.

**{¶73}** R.C. 2151.414(B)(1)(e) states that, "[f]or the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an

agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."

**{¶74}** In the case at bar, the record establishes by competent credible evidence that L.A. 1 had been in the temporary custody of the SCJFS for over twelve months of a consecutive 22-month period at the time the motion for permanent custody was filed.

**{¶75}** As findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, each is independently sufficient to use as a basis to grant the motion for permanent custody. *In re Daltoni*, 2007-Ohio-5805 (5th Dist.); *In re: K.C.,* 2024-Ohio-2081, ¶45 (10th Dist.). This finding alone, in conjunction with a best interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun*, 2008-Ohio-5458 (5th Dist.) *In re: K.C.,* 2024-Ohio-2081, ¶45 (10th Dist.).

**{¶76}** Because Father has not challenged the twelve of twenty-two-month finding as to L.A. 1, we would only need to address the best interest of L.A. 1 pursuant to R.C. 2151.414(D). Id. However, the trial judge also found that R.C. 2151.414(B)(1)(a) was applicable to L.A. 1 and to L.A. 2.

**Parental Placement within a Reasonable Time– R.C. 2151.414(B)(1)(a)**

**{¶77}** The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E). The statute also indicates that if the court makes a finding under R.C. 2151.414(E)(1) - (15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor

alone will support a finding that the child cannot be placed with the parent within a reasonable time. *See In re William S.*, 75 Ohio St.3d 95 (1996); *In re Hurlow*, 1997 WL 701328 (4th Dist. Sept. 21, 1998); *In re Butcher,* 1991 WL 62145 (4th Dist. Apr. 10, 1991).

{¶78}    R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be

placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

…

(16) Any other factor the court considers relevant.

**{¶79}** As set forth above, the trial judge's findings are based upon competent credible evidence. The record includes the recommendation of the guardian ad litem for the children, and the testimony of the witnesses at trial. The trial judge was in the best position to determine the credibility of the witnesses.

**{¶80}** The judge found that SCJFS had made reasonable efforts to prevent the removal, to eliminate the continued removal, or to make it possible for the children to return home safely to Father's home. The record supports the judge's finding that Father has not shown consistent sustained progress to have the children returned to his custody.

**{¶81}** It does not appear that Father has been able to apply any behavioral changes that he has attempted to learn. Despite offering numerous services, Father was unable or unwilling to mitigate the concerns that led to the children's removal. As set forth in our *Facts and Procedural History, supra*, we find there was sufficient and substantial competent evidence Father failed to remedy the problems which initially caused the removal of the children from her home. Father left the hearing, never to return, after the proceedings began evidencing his disinterest in working toward reunification with his children.

**{¶82}** In the case of *In re: Summerfield*, 2005-Ohio-5523 (5th Dist.), this Court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time. *Accord, In re: K.C.*, 2024-Ohio-2081, ¶56 (10th Dist.).

**{¶83}** The evidence demonstrated the very little successful efforts Father had made on the case plan. On that point, the evidence demonstrates that any improvement that Father has made in his life is tentative and, perhaps, temporary, and that he is at risk of relapse. The trial court found that Father is not able to be a successful parent to the children.

**{¶84}** We find there is competent and credible evidence, which, if believed, would convince the average mind that the children cannot be placed with Father within a reasonable time or should not be placed with Father.

**The Best Interest of the Child**

{¶85}   An agency that seeks permanent custody of a child bears the burden of proving by clear and convincing evidence that the grant of permanent custody is in the child's best interest. *In re B.C.,* 141 Ohio St.3d 55, 2014-Ohio-4558, ¶ 26.

{¶86}   R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) apply.

{¶87}   The factors in R.C. 2151.414(E)(7) through (11), which are referred to in R.C. 2151.414(D)(1)(e), involve a parent's having been convicted of or pleaded guilty to specific criminal offenses against the child, the child's sibling or another child who lived in the parent's household; a parent's withholding medical treatment or food from the child; a parent's repeatedly placing the child at substantial risk of harm because of alcohol or drug abuse; a parent's abandoning the child; and a parent's having had parental rights as to the child's sibling involuntarily terminated.

{¶88}   No one element is given greater weight or heightened significance. *In re C.F.,* 2007-Ohio-1104. R.C. 2151.414(D)(1) does not require a juvenile court to make specific findings regarding each best-interest factor listed in R.C. 2151.414(D)(1) or to include in its decision or judgment entry a written discussion of each of those factors. *In re: A.M.,* 2020-Ohio-5102, ¶33.

**{¶89}** A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 2000 WL 1700073 (5th Dist. Nov. 13, 2000), *citing in re Awkal,* 85 Ohio App.3d 309, 316 (8th Dist. 1994).

**{¶90}** In the case at bar, SCJFS investigated potential placement with relatives and found none suitable. Further, the evidence establishes that L.A. 1 has substantial medical needs which make it difficult for him to be successfully returned to Father. Considering the many obstacles in Father's life the trial judge found the children's need for a legally secure placement cannot be achieved without permanent custody. Nothing in the record before us demonstrates that more time or a return of custody to the Father will in any way benefit the children. The case has been ongoing for over two years and Father has not demonstrated a willingness to give up drugs and do the work necessary to obtain reunification. He left the hearing without participating, offering evidence, or demonstrating any interest in the outcome.

**{¶91}** In the present case, the trial judge concluded the children's need for legally secure placement could not be achieved without awarding permanent custody to SCJFS. Upon review of the record, the record supports the trial judge's finding that granting the motion for permanent custody is in the children's best interest.

{¶92} In short, the juvenile judge's judgment entry demonstrates that the judge satisfied his statutory duty to consider the best interest factors set out in R.C. 2151.414(D)(1)(a) through (e).

**Conclusion**

{¶93} For these reasons, we find that the trial judge correctly found that L.A. 1 had been in the temporary custody of SCJFS for over twelve months of a consecutive 22-month period.

{¶94} We further find the trial judge's determination that Father had failed to remedy the issues that caused the initial removal, and, therefore, the children could not be placed with him within a reasonable time or should not be placed with him was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶95} We further find that the trial court's decision that permanent custody to SCJFS was in the children's best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶96} Because the evidence in the record supports the trial judge's judgment, we overrule Appellant-Father's Third Assignment of error.

{¶97} The decision of the Stark County Court of Common Pleas, Family Court Division is affirmed.


By Gwin, P.J.,

Hoffman, J., and

Wise, J., concur