[Cite as *In re P.T.*, 2024-Ohio-5022.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| IN THE MATTER OF: | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. John W. Wise, J.<br>Hon. Andrew J. King, J. |
| P.T.<br>S.T.<br>J.T.<br>H.T. | Case Nos. 2024 CA 00101<br>2024 CA 00102<br>2024 CA 00103<br>2024 CA 00104 |
| MINOR CHILDREN | O P I N I O N<br>NUNC PRO TUNC |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Court of Common Pleas, Juvenile Division, Case Nos. 22JVC01431, 01432, 01433 and 01434 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | October 22, 2024 |

APPEARANCES:

| For Plaintiff-Appellant Mother | For Defendant-Appellee |
|---|---|
| KATELYN SHOEMAKER<br>201 Cleveland Avenue, SW<br>Suite 104<br>Canton, Ohio 44702 | BRANDON J. WALTENBAUGH<br>STARK COUNTY DJFS<br>402 2nd Street, SE<br>Canton, Ohio 44702 |

*Wise, J.*

{¶1}    Appellant Mother appeals the June 12, 2024 judgment entries of the Stark County Court of Common Pleas, Family Court Division, awarding permanent custody of her four children to the Stark County Department of Job and Family Services (SCDJFS/Agency).    For the reasons that follow, we affirm the decision of the Family Court.

### FACTS AND PROCEDURAL HISTORY

{¶2}    P.T., dob August 31, 2010; S.T., dob November 2, 2012; H.T., dob October 28, 2014 and J.T., dob December 7, 2016, are the biological children of appellant-mother, C.B.   J.T., the children's biological father, is not part of this appeal, having voluntarily relinquished permanent custody of the children to SCDJFS.

{¶3}    The family became involved with the Family Court in December, 2022 when a complaint alleging dependency and/or neglect was filed alleging substance abuse, criminal activity, deplorable home conditions, lack of compliance with non-court services, and a family member removing one of the children from the hospital against medical advice.

{¶4}    On December 9, 2022, the trial court held an emergency shelter care hearing and found that probable cause existed for the issuance of emergency orders; emergency temporary custody of the four children was granted to SCDJFS.

{¶5}    A case plan was prepared by the Agency for both the mother and father and approved and adopted by the trial court.  The case plan for the mother included substance abuse treatment, stable housing, mental health treatment and drug and alcohol screening.  The goal of the plan was reunification.

**{¶6}** On March 7, 2023, the matter was set for trial. The allegations of neglect were deleted from the complaint, and mother and father stipulated to a finding of dependency.

**{¶7}** Temporary custody of the children remained with SCDJFS. Case plans for the parents were approved and adopted by the trial court.

**{¶8}** Review hearings were held June 6, 2023, November 3, 2023, and January 3, 2024.

**{¶9}** Mother continued to struggle with the case plan. Her drug screenings were positive for cocaine and methamphetamine, she did not comply with some scheduled drug screenings, was not engaged in scheduled social services, was indicted on felony drug charges, was evicted, was inconsistent with housing and employment, was incarcerated and had uneven visits and telephone calls with the children.

**{¶10}** On April 16, 2024, the Agency filed a motion for permanent custody of all four children.

**{¶11}** On June 10, 2024, the motion for permanent custody came on for hearing before the Hon. Rosemarie A. Hall, of the Stark County Court of Common Pleas, Family County Division.

**{¶12}** Present at the hearing were the Guardian ad Litem, the father, counsel for father, the Agency and counsel, and Zina Biehl, caseworker for the Agency. The mother was a resident of Stark County Community Correction Center (SRCCC) as a result of her criminal conviction and appeared for the hearing via ZOOM. Her counsel attended the hearing in person.

*First Phase – Grounds for permanent custody*

{¶13} The caseworker testified that the children have been in the temporary custody of the Agency for at least 12 of the last 22 months.  Tr., June 10, 2024 at 9.

{¶14} The caseworker testified that in December, 2022, the Agency filed a complaint for an emergency shelter care hearing when one of the children was removed from the hospital against medical advice, the house was in disarray and deplorable, and there was continued drug abuse by the mother.  The trial court found that probable cause existed for the issuance of the emergency orders and granted temporary custody of the children to SCDJFS.

{¶15} A case plan was developed to allow mother to regain custody of the children. Mother completed drug assessments at CommQuest and intensive outpatient treatment to residential treatment was suggested.  Meanwhile, during this period, mother violated her probation and was placed in residential treatment for 26 days. After the stay, mother requested a drug screening.  The results came back positive for cocaine.

{¶16} Between December, 2022 and March, 2024, mother tested positive for several drugs including cocaine and methamphetamine.

{¶17} She was indicted and pled guilty to fentanyl drug possession charges in January, 2024.  She was sentenced to three-years' probation and ordered to attend intensive outpatient rehabilitation. When she was discharged from outpatient rehabilitation for noncompliance, her probation was revoked and she was ordered to confinement at SRCCC.

{¶18} In short, since the children were removed from her care, she has continued to test positive for illegal drugs and been involved in two more criminal cases involving

drug possession. At the time of the hearing, she had no gainful employment and no housing suitable for the children.

**{¶19}** The caseworker further testified that mother's visits with the children were bi-weekly for two hours and she was allowed telephone calls with them. She usually brought food to eat on those visits and while the visits were sometimes chaotic with four children clamoring for attention, the children loved their mother and wanted to spend time with her.

**{¶20}** The caseworker concluded her testimony by opining that while the Agency had made reasonable efforts to try to reunify mother with the children, it was unsuccessful. At the time of the hearing, mother was a resident at SRCCC for at least another 90 days and still on probation for drug possession.

*Second Phase – Best interests of children*

**{¶21}** The caseworker testified that none of the children have any serious developmental issues. They are in counseling and doing well in school.

**{¶22}** They were placed with their maternal grandfather in January, 2023 and have lived with him, his wife and her two children. The children of the wife of the grandfather are ages 16 and 21.

**{¶23}** The caseworker testified she visited the home at least 20 times since the opening of the case and while grandfather's home is much different than living with mother and father, the children are adjusting to the changes. The grandfather's home is more structured with limited access to electronics and cell phone usage.

**{¶24}** Maternal grandfather would like to pursue adoption of the children and is not interested in legal custody.

**{¶25}** The caseworker opined that while the children love their parents, their need for stability outweighs their bond. It is in the children's best interests for the court to grant permanent custody.

**{¶26}** Mother testified that after her residency at SRCCC terminated, she was promised employment with McGee Movers and her employer would provide rental of a home on Oby Place in Canton, Ohio. She did not want to lose custody of her children and wanted more time to work on her case plan.

**{¶27}** At the close of the hearing, the guardian ad litem testified that it was his opinion that the best interests of the children were best served by remaining with the grandfather.

**{¶28}** He observed the children with both the mother and in the grandfather's home. He opined that the children were enjoying school and thrived with the structure they received in the grandfather's home.

**{¶29}** At the conclusion of the hearing, the trial court took the matter under advisement.

*Trial Court decision*

**{¶30}** On June 12, 2024, the trial court granted permanent custody of all four children to SCDJFS and terminated the parents' parental rights and responsibilities. It filed Findings of Fact and Conclusions of Law separately for each of the children consisting of twenty-one pages and a separate Judgment Entry, Findings of Fact and Conclusions of Law; Judgment Entry, June 12, 2024.

**{¶31}** It found that the children have been in temporary custody for 12 or more months of a consecutive 22-month period. It also found that father wishes to relinquish

parental rights to the children. It further found that despite reasonable efforts by SCDJFS, the four children could not be placed with either parent at this time or within a reasonable period of time. Finally, it found that it was in the best interests of the four children that permanent custody be granted to the SCDJFS. Judgment Entry, June 12, 2024.

{¶32} Mother timely appealed arguing two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶33} "I.    THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT GROUNDS EXISTED FOR PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶34} "II.    THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTERESTS OF THE MINOR CHILD TO GRANT PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**LAW AND ANALYSIS**

*Standard of Review in Permanent Custody*

{¶35} In *In re Z.C.,* 2023-Ohio-4703, the Ohio Supreme Court resolved a certified conflict between two Ohio appellate districts regarding the appropriate standard of review for permanent custody decisions made pursuant to R.C. 2141.414. *Id.* at ¶ 1. The court concluded that the appellate standard of review for a permanent custody decision was

sufficiency of the evidence/manifest weight of the evidence. *Id.* at ¶ 18. Recognizing that sufficiency and manifest weight of the evidence are separate and distinct standards, the court stated that the appellate court must apply the standard "as appropriate depending on the nature of the arguments that are presented by the parties." *Id.* at ¶ 11.

**{¶36}** Here, appellant-mother frames her alleged errors in the trial court granting permanent custody to SCDJFS as against the manifest weight of the evidence and lack of clear and convincing evidence.

**{¶37}** Accordingly, we review the assigned errors under a manifest weight of the evidence standard.

**{¶38}** Because both assignments of error argue manifest weight of the evidence, they will be addressed together.

**{¶39}** On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered. *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist., 1983); *State v. Thompkins,* 1997-Ohio-52.

**{¶40}** Because the fact finder is in the best position to weigh the credibility of the witnesses and observe their demeanor, a reviewing court will always be mindful of the presumption in favor of the trial court's factual findings. *Eastley v. Volkman,* 2012-Ohio-2179, ¶ 21.

*Burden of proof for permanent custody*

**{¶41}** An award of permanent custody must be based on clear and convincing evidence, R. C. 2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477, 120 N.E.2d 118. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C. E. Morris Co., v. Foley Constr. Co.,* 54 Ohio St.2d 279 (1978).

*R.C. 2151.414(B) Determinations by Trial Court*

**{¶42}** Pursuant to R.C. 2151.414(B), a trial court may grant permanent custody of a child to a movant if the court determines at the hearing, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that one of four circumstances apply. In practice, a trial court will usually determine whether one of the four circumstances outlined in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶43}** R.C. 2151.414(B) authorizes the court to grant permanent custody of the child to the public or private agency if the court determines by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the Agency

and that any of the following apply:  (a)  The child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned, (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody, (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two- month period.

{¶44}  If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time, or should not be placed with the parents.

{¶45}  Here, the trial court made findings pursuant to R.C. 2151.414(B)(1)(a) (Reasonable time) and R.C. 2151.414(B)(1)(d) (12 months in 22 months) "For the reasons stated in those findings and conclusions, the Court finds by clear and convincing evidence:  3. P.T. has been in the temporary custody for 12 or more months of a consecutive 22-month period." Judgment Entry June 12, 2024 No. 3.  "For the reasons stated in those findings and conclusions, the Court finds by clear and convincing evidence that P.T. cannot be placed with either parent at this time or within a reasonable period of time."  Judgment Entry, June 12, 2024 No. 6.[1]

{¶46}  As long as one of these factors is present, then the first prong of the test is satisfied. As findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, each is independently sufficient to use as a basis to grant the motion for permanent custody.  One of these findings alone, coupled with best interest finding, is

---

[1] The trial court made identical findings for all four of the children.

sufficient to support the granting of permanent custody. *In re. L.A.,* 2024-Ohio-3436, ¶ 75 (5th Dist.).

{¶47} Appellant argues that she substantially complied with her case plan, disputing the trial court's finding of reasonable time. R.C. 2151.414 (B)(1)(a). The undisputed record, however, belies that claim. Appellant's case plan revolved around the main goal of mother being free of substance abuse. Mother fell woefully short of that goal. After the children were placed in emergency custody in December, 2022 to the time of the permanent custody hearing in April, 2024, mother was indicted two times for criminal charges involving drug possession. Indeed, in January, 2024, she was found guilty of aggravated possession of Fentanyl. She tested positive for cocaine and methamphetamine during this period. She was not compliant with drug screening and refused to enter residential treatment when intensive outpatient rehabilitation failed. Her probation was revoked for noncompliance with drug treatment and at the time of the permanent custody hearing, she was a resident of SRCCC with a release date no sooner than ninety days.

{¶48} To be sure, the exact problems with drug abuse that led to the initial removal of the children remained in existence at the time of the complaint for permanent custody.

{¶49} With regard to her future plans for the children, mother testified that upon her release, she had been promised employment with McGee Movers and a home to rent from her employer. But she produced no proof of such plan, stating that she planned to get a writing on letterhead from her employer in the future.

{¶50} While appellant disputes the finding that the children cannot be placed with her within a reasonable time, she does not and cannot dispute the fact that the children

were in the temporary custody of the Agency for 12 or more months of a consecutive 22-month period, as found by the trial court. R.C. 2151.414(B)(1)(d). The children were found dependent on March 7, 2023 and placed in the temporary custody of SCDJFS. The children remained in the temporary custody of the Agency throughout the case. The motions requesting permanent custody were filed on April 16, 2024. The period of time is well in excess of 12 months.

**{¶51}** This Court has adopted the position that proof of temporary custody with an agency for twelve or more months of a consecutive twenty-two-month period alone is sufficient to award permanent custody. *In re. D.H.,* 2022-Ohio-4495, ¶ 59 (5th Dist.). Therefore, a finding that grounds existed for permanent custody cannot be against the manifest weight of the evidence. *Matter of L.G.,* 2021-Ohio-743, ¶ 36 (5th Dist.).

*Best Interest Determination by Trial Court*

**{¶52}** In determining the best interest of the children at the permanent custody hearing, the trial court must consider all relevant factors, including but not limited to the following: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child as expressed directly by the child or through the guardian's ad litem, with due regard for the maturity of the child; (c) the custodial history of the child; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors in division (E)(7) to (11) of R.C. 2151.414 apply in relation to the parents and child, R.C. 2151.414(D).

{¶53} We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact that court's determination will have on the lives of the parties concerned." *In re: E.H.,* 2022-Ohio-1682, ¶ 101 (5th Dist.) quoting *In re: Manzy Children,* 5th Dist., No. 2000CA00244, 2000 WL 170073 (Nov. 13, 2000) citing *In re: Awkal, 9*5 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist., 1994).

{¶54} The trial court found that it is in the children's best interests that SCDJFS be awarded permanent custody and thus eligible for a permanent adoptive home. We find there was competent, credible evidence to support the trial court's decision and it is not against the manifest weight of the evidence.

{¶55} The trial court heard the testimony of Zina Biehl, the case worker assigned to the children's cases and read the final report of the GAL and heard his testimony.

{¶56} The trial court found that at the time of the permanent custody hearing in June, 2024, T.T. was 13 (dob August 31, 2010); S.T. was 11 (dob November 2, 2012); H.T. was 9 (dob October 28, 2013); and J.T. was 7 (dob December 7, 2015). They have been in the same foster home since January, 2023, with their maternal grandfather. Also living in the home is his wife and her two children.

{¶57} The children have no significant developmental delays, although H.T. may need an evaluation for ADHD and/or anxiety. The children are in counseling and benefitting from the structure found in their grandfather's home.

{¶58} The caseworker visited the grandfather's home at least once a month estimated to be at least twenty times. She found the children are bonded at their

grandfather's home with rules that are much different than mother and father. Their electronic and cell phone usage is restricted.

**{¶59}** The children are doing well in the new school district. The grandfather and his home meet all of the children's needs.

**{¶60}** The trial court further made a finding that grandfather is interested in adopting the children in the future and is not interested in a change of legal custody. The grandfather may let mother visit with the children in the future if she is stable and getting treatment.

**{¶61}** Mother argues that the children expressed love for their parents and wanted to visit mother throughout the case. However, the caseworker also testified that the mother often missed telephone calls with the children or would call too late in the evening. She further testified the children were disappointed with mother and would not talk to her, hoping that if they did not take her phone calls, she would become upset and want to work on her services.

**{¶62}** Mother argues that if given more time to work on the case plan, she can remain clean and sober and find employment and housing. However, the evidence suggests that mother had ample time to work on her case plan services and little to no progress was made. Instead, during that time, mother tested positive for drugs and was charged with two crimes involving drug abuse.

**{¶63}** Mother argues that there is a viable option in a change of legal custody rather than the more onerous order for permanent custody. However, grandfather does not want legal custody but favors adoption to provide the children with a stable home.

**{¶64}** Mother argues that SCDJFS did not meet its burden of proving that an award of permanent custody to the Agency is in the children's best interests, again arguing that she substantially complied with the case plan and has plans for employment and a home for the children.  However, the evidence demonstrates that any detriment which may occur by severing any bond is outweighed by the benefits of permanency for the children.

**{¶65}** As found by the trial court, the children deserve to be in a stable, loving environment.

**{¶66}** The clear and convincing evidence here supports the trial court's finding that the children's, P.T., S.T., H.T. and J.T., best interests are served by awarding SCDJFS permanent custody thus making them eligible for a permanent adoptive home.

**{¶67}** The trial court's findings are not against the manifest weight of the evidence and appellant's first and second assignments of error are overruled.

**CONCLUSION**

**{¶68}** This Court finds that the trial court carefully weighed the evidence and found by clear and convincing evidence that P.T., S.T., H.T. and J.T. cannot be placed with either parent within a reasonable time, the children have been in the custody of SCDJFS for over twelve months of a 22-month-period and that permanent custody of P.T., S.T., H.T. and J.T. to SCDJFS are in their best interests.

**{¶69}** Mother-Appellant's Assignments of Error are overruled.

**{¶70}** The judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is affirmed.

By: Wise, J.

Hoffman, P. J., and

King, J., concur.

JWW/kt 1015