[Cite as *In re A.S.*, 2025-Ohio-2643.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|   |   |   |
|---|---|---|
| IN RE: A. S. | : | **JUDGES:** |
|  | : | Hon. William B. Hoffman, P.J. |
|  | : | Hon. Andrew J. King, J. |
|  | : | Hon. Kevin W. Popham, J. |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | Case No. 24-COA-035 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING:     Appeal from the Ashland County Court of Common Pleas, Juvenile Division, Case No.20223022

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     July 21, 2025

APPEARANCES:

For Plaintiff-Appellee

CHRISTOPHER R. TUNNELL
Ashland County Prosecutor
BY DREAMA KAY REESE
Assistant Prosecutor
110 Cottage Street
Ashland, OH 44805

For Defendant-Appellant

JOSEPH P. KEARNS
P.O. Box 345
153 West Main Street
Ashland, OH 44805

*Popham, J.*

{¶1}   Appellant-mother R.S. ["Mother"] appeals the August 23, 2024, Judgment Entry of the Ashland County Court of Common Pleas, Juvenile Division that terminated her parental rights with respect to her minor child, A.S. and granted permanent custody of the child to appellee, the Ashland County Department of Jobs and Family Services ("ACDJFS")[1].   For the reasons below, we affirm.

*Facts and Procedural History*

{¶2}   R.S. is the natural mother of A.S. (b. 06.06.2022).  The father of A.S. is E.S.

{¶3}   Mother's three children, and A.S.'s siblings, M.S.[2], Y.C.[3] and Y.S.[4] were placed in the temporary custody of the ACDJFS.  On April 14, 2021, law enforcement was called to the home, and a safety plan was initiated.  While the family was participating in a safety plan with the ACDJFS, Mother tested positive for methamphetamine and law enforcement removed the minor children pursuant to Juvenile Rule 6 on April 22, 2021.

{¶4}   A Dispositional Hearing was held July 16, 2021.  The court noted that Mother "is still demonstrating troubling behavior in her interactions with the [ACDJFS]," allegedly making threats and being unwilling to have "normal" conversations.  The court further noted that Mother was inconsistent with her attendance at the Ashland County Council of Alcohol and Drug Abuse for substance abuse counseling, and she continues to test positive for THC. The court found that Mother must make advancements in parent education and mental health treatment to achieve reunification.  The court found that it

---

[1] Recognizing the heightened privacy interests of minors, we identify the parents and the minors only by their initials in accord with Sup.R. 1(A), 44(C), 44(H) and 45(D); S.Ct.Prac.R.3.12; R.C. 2303.901; Juv.R.4.

[2] 5th Dist. No. 24COA032 / Ashland Juvenile Court Number 20213024

[3] 5th Dist. No. 24COA033 / Ashland Juvenile Court Number 20213026

[4] 5th Dist. No. 24COA034 / Ashland Juvenile Court Number 20213025

is in the best interest of the minor children to remain in the temporary custody of the ACDJFS.

{¶5} A.S. was born during the pendency of the companion cases. A Complaint was filed on November 17, 2022, alleging A.S. to be a Dependent Child. It was alleged that Mother submitted to a random drug test on November 10, 2022. On November 15, 2022, the ACDJFS was notified that Mother's drug screen was positive for methamphetamine. A.S. was removed from Mother's custody at the conclusion of Mother and A.S.'s visit with the older siblings that took place at the ACDJFS on November 16, 2022. When confronted with the positive drug screen, Mother stated that her prescription, Wellbutrin, caused the positive methamphetamine result.

{¶6} On December 19, 2022, the court adjudicated A.S. a dependent child and placed A.S. in the temporary legal custody of the ACDJFS. A Dispositional hearing was conducted on January 23, 2023, with the court ordering temporary custody remain with the ACDJFS.

{¶7} The court conducted a review hearing on February 17, 2023. During the hearing, evidence was presented that Mother had not been compliant with court orders regarding counseling, therapy and medication. Mother informed the court that she wished to pursue self-medicating with THC instead of returning to counseling and/or therapy. It was brought to the court's attention that Mother had not been compliant with the ACDJFS' Color Randomization procedure relating to drug screening.

{¶8} The court conducted a Case Plan Review Hearing and Case Review Hearing on March 20, 2023. The court was advised that Mother had completed all parenting education requirements; advised that Mother was using medical marijuana as

a management tool for her anxiety, and that Mother ceased the use of Wellbutrin because she believed it was causing her to test positive for methamphetamine on drug screens. Visitation between A.S., the siblings and Mother had been continuing as scheduled. The court was made aware during the March 20 hearing that Mother had participated in approximately one hundred eleven phone calls with A.S.'s father, E.S., while he was incarcerated in the Ashland County Jail on charges of gross sexual imposition involving one of A.S.'s minor siblings.

{¶9} A.S. was moved to a different foster home on June 2, 2023.

{¶10} A Motion for Permanent Custody was filed on November 21, 2023.

{¶11} An Annual Review Hearing occurred on December 12, 2023. The court was advised that Mother had not been participating in the Color Randomization Program through the ACDJFS, as it pertains to drug screening, despite being ordered to do so; the medical marijuana card Mother had at one time had expired, she had not renewed the card, and Mother had not participated in substance use treatment. The court ordered A.S. to remain in the temporary legal custody of the ACDJFS pending the Disposition of the motion for permanent custody.

{¶12} The motion for permanent custody was heard January 30, February 12, and February 14, 2024.

### The permanent custody hearing

{¶13} Prior to the start of the testimony, Mother stipulated to the admissibility of her drug testing records from Forensic Fluids Laboratory. Testimony on the content of the records was presented in the companion cases involving A.S.'s siblings. 1T. at 14; State's Exhibits 3, 4, 5 and 8. Certified copies of the logs of prison phone calls between

Mother and E.S. were likewise stipulated to by the parties and admitted into evidence. *Id.* at 18; State's Exhibit 7.

*ACDJFS Involvement*

{¶14} Carla Wilkinson, the ongoing caseworker for the ACDJFS testified that she began working with the family in September 2022. 1T. at 26.[5] ACDJFS initially became involved in March 2021 when it was alleged that Mother had left the three older siblings alone while taking E.S. to work. Wilkinson testified that on April 14, 2021, law enforcement was called to the home, and a safety plan was initiated. While the family was participating in a safety plan with the ACDJFS, Mother tested positive for methamphetamine. Wilkinson testified that law enforcement removed the minor children pursuant to Juvenile Rule 6 on April 22, 2021. *Id*. at 27-28.

{¶15} Wilkinson testified that, with respect to A.S., the ACDJFS noted that Mother had completed intensive parenting education. 1T. at 29. Wilkinson testified that in September 2022, the ACDJFS was moving toward reunification of the other three children with Mother. *Id.* Wilkinson testified that Mother had been compliant with the Children Services drug testing program and had tested negative for all illegal drugs since March of 2022. 1T. at 29-31. Wilkinson testified that Mother remained drug free until A.S. was born, so the decision was made to allow A.S. to remain home with Mother. *Id.* at 31.

{¶16} Wilkinson testified that on September 6, 2022, Mother tested positive for THC. 1T. at 33. Wilkinson testified that Mother again tested positive for THC on

---

[5] For clarity, the transcript of Mother's permanent custody hearing will be referred to as "__T.__" signifying the volume and page number.

September 7 and September 8, 2022. *Id.* at 34-35.  Wilkinson testified that in September 2022, E.S. was arrested for sexually abusing one of A.S.'s minor siblings.  *Id.* at 35.

{¶17}  Wilkinson testified that a Complaint was filed  on  November  17,  2022, alleging A.S. to be a Dependent Child.  Wilkinson testified it was alleged that Mother submitted to a random drug test on November 10, 2022. On November 15, 2022, the ACDJFS was notified that Mother's drug screen was positive for methamphetamine.  A.S. was removed from Mother's custody at the conclusion of Mother and A.S.'s visit with the older siblings that took place at the ACDJFS on November 16, 2022.  Wilkinson testified that, when confronted with the positive drug screen, Mother said that her prescription for Wellbutrin caused the positive methamphetamine result.  1T. at 36-37.  Wilkinson testified that A.S. was placed in the Hernandez foster home with her three older siblings.  1T. at 37.

{¶18}  Wilkinson testified that a case plan was developed that required Mother to participate with the Forensic Fluids Laboratory Randomization Program, and to participate in substance abuse and mental health treatment. 1T. at 39.

{¶19}  Wilkinson testified that beginning in July 2022, Mother was enrolled in Forensic Fluids Drug Testing Randomization Program.  Wilkinson testified that Mother appeared for testing only five of the seventeen times that she was required to appear. 1T. at 43.  Wilkinson testified that there were several months that Mother did no drug testing at all.  *Id*. at 44.  Wilkinson testified that Mother did not participate in any substance abuse treatment.

{¶20}  Wilkinson testified that in July 2023, Mother reportedly contacted Affect Therapeutics concerning drug and alcohol treatment. 1T. at 39-40.  Wilkinson testified

that it was reported that Affect Therapeutics is a virtual service. Drug testing was done at home during a video chat with her counselor. *Id.* Wilkinson testified that Mother was terminated from that program for non-attendance. *Id.* at 41.

{¶21} Wilkinson testified that Mother was diagnosed with post-traumatic stress disorder, major depressive disorder, and generalized anxiety disorder. 1T. at 47. Wilkinson testified that Mother stopped mental health treatment in September 2022. 1T. at 45. Wilkinson testified that Mother told Wilkinson that she was taking herself off prescription medication and was going to self-medicate with high levels of THC. *Id.* at 48; 57.

{¶22} Wilkinson testified that Mother tested positive at Forensic Fluids Laboratory for methamphetamine numerous times. 1T. at 49. Wilkinson testified that Mother also tested positive for THC. *Id.* Wilkinson testified that Mother blamed Wellbutrin and her medical marijuana for any positive methamphetamine results.

{¶23} Wilkinson testified that Mother obtained a medical marijuana card in November 2021. 1T. at 50. Wilkinson testified that Mother allowed the card to lapse in July 2022. *Id.* Wilkinson testified that Mother renewed the card in November 2022. *Id.* at 51. Wilkinson testified that Mother continued to test positive for THC even when she did not have a medical marijuana card. *Id.*

{¶24} Wilkinson testified that Mother also admitted to using Delta-8, an unregulated form of THC, which is less potent than Delta-9 medical marijuana THC. *Id.* at 52. Wilkinson testified that Mother signed a release for a company reported by Mother to have issued the referral for the medical marijuana card; however, when contacted by the ACDJFS, the company indicated it did not know Mother. *Id.* at 54. Wilkinson testified

that Mother tested positive for methamphetamine and THC as recently as February 6, 2024. 2T. at 218.

{¶25} Wilkinson testified that Mother was not cooperative with home visits by the ACDJFS. 1T. at 63-66. Wilkinson testified that the ACDJFS was not able to conduct home visits with Mother at her apartment in April, May, June, September, and October 2023, because Mother was not home or did not answer the door. Wilkinson testified that Mother had no reliable means of transportation *Id.*

{¶26} Wilkinson testified that Mother was in a physical altercation with her paramour, F.C. 1T. at 81-82. Wilkinson testified that Mother declined domestic violence services through Affect Therapeutics and the ACDJFS. *Id.*

{¶27} Wilkinson testified that Mother's visitation with the children, including A.S., was sporadic. 1T. at 83. Wilkinson testified that Mother did not visit between April 5, 2023, and May 17, 2023, because of transportation issues. *Id*. at 84-85. Wilkinson testified that Mother canceled visits on December 19, 2023, January 2, January 9, and February 6, 2024. 2T. at 216.

{¶28} Wilkinson testified that the decision to file for permanent custody was made as a combined result of Mother's abusive relationships, her mental health and substance abuse concerns, and her persistent transportation problems. 2T. at 220.

{¶29} Wilkinson testified that the ACDJFS investigated relative placement for the children but found no suitable relative. 1T. at 91-92.

*Mother's Testimony*

{¶30} Mother testified that she has been self-medicating with marijuana since age 13. 3T. at 306. Mother testified that she did not engage in any mental health or substance

abuse services between November 2022 and June 2023. *Id*. at 308. Mother testified that she was terminated from Affect Therapeutics for missing appointments. *Id.* at 309-310. Mother testified that she has made two appointments for substance abuse counseling with the One Eighty program. *Id.* at 312. Mother testified that she overslept and missed the first appointment, and she was in court during the time scheduled for the second appointment, so she missed that appointment. *Id.*

{¶31} Mother testified that she has been diagnosed with post-traumatic stress disorder, major depressive disorder, and generalized anxiety disorder. 3T. at 317. Mother testified that she was diagnosed with cannabis use disorder. *Id.* at 359; 364. Mother testified the PTSD was the result of a traumatic childhood. Mother testified that Mother was prescribed Effexor, Trazodone, Minipress, and Zoloft to treat her conditions. *Id.* at 330-331. Mother testified she took herself off the medications prescribed to treat the PTSD, anxiety, and depression. *Id*. at 330. Mother testified that she has not seen Dr. Vellanki, who had prescribed the medications, since the Fall of 2022. *Id.* at 356.

{¶32} Mother testified that she does not have cannabis use disorder because she does not smoke pot. 3T. at 365. Mother testified that she does not need a medical marijuana card because marijuana is now legal. *Id*. at 367. Mother testified that she vapes, but does not smoke, marijuana. *Id.* at 368. Mother testified that she tested positive for methamphetamine on February 6, 2024. *Id.* at 358. Mother testified that she has never used methamphetamines; however, Mother continues to use THC. *Id.* at 383.

{¶33} Mother testified that she took E.S.'s calls from the jail because she was financially dependent on his family. 3T. at 354. Mother testified that F.C., a paramour, hit her, leaving a mark on her face. *Id.* at 366.

{¶34} Mother testified that, including the visit schedule the day before her testimony, she has missed four out of the last six visits with the children. 3T. at 376-377. Mother testified that in the last three years, she has had COVID four or five times. *Id.* at 376. Mother testified illness and transportation issues caused her to be late and to miss visitations with the children. *Id.* at 322.

{¶35} Mother testified that she is employed working third shift on a line assembling weed whackers. 3T. at 311; 342. Mother testified that she has appropriate housing for her and the children.

*The Trial Court's Decision*

{¶36} By Judgment Entry filed August 23, 2024, the trial judge issued findings of fact granting permanent custody of A.S. to the ACDJFS.

{¶37} Specifically, the trial judge found that A.S. has not been in the Temporary Custody of the ACDJFS for twelve months out of a consecutive twenty-two-month period as of the filing of the Motion for Permanent Custody. However, the trial court further found by clear and convincing evidence A.S. cannot or should not be placed with Mother because she failed to remedy the problems which resulted in A.S.'s removal from the home. The trial court noted that Mother continues to self-medicate with illegal drugs as evidenced by positive drug screens, and she has been non-compliant with case plan services and case management requirements designed to allow her to resume and maintain parental duties.

{¶38} Further, the trial court found that Mother's mental health, chemical dependency, and unwillingness to treat the same is so severe that it makes her unable to

regularly, consistently, and predictably provide an adequate permanent home for A.S. at the present time and, as anticipated, within one year after these proceedings.

{¶39} The trial court further found that granting permanent custody to the ACDJFS was in the best interests of A.S.

*Assignment of Error*

{¶40} Mother raises one assignment of error,

{¶41} "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT GRANTED PERMANENT CUSTODY OF THE CHILD TO THE ASHLAND COUNTY DEPARTMENT OF JOBS AND FAMILY SERVICES."

I.

{¶42} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157 (1990), *quoting Stanley v. Illinois*, 405 U.S. 645 (1972). A parent's interest in the care, custody, and management of his or her child is "fundamental." *Id*.; *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith,* 77 Ohio App.3d 1, 16 (6th Dist. 1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." *Id.* An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1).

**Standard of Review**

{¶43} The Supreme Court of Ohio has recently delineated our standard of review as follows, "the proper appellate standards of review to apply in cases involving a juvenile court's decision under R.C. 2151.414 to award permanent custody of a child and to

terminate parental rights are the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards, as appropriate depending on the nature of the arguments that are presented by the parties." *In re: Z.C.,* 2023-Ohio-4703, ¶18.

{¶44} We interpret Mother's assignment of error to challenge both the sufficiency and the manifest weight of the evidence.

*Sufficiency of the Evidence*

{¶45} Sufficiency of the evidence is a question of law reviewed de novo. *State v. Walker*, 2016-Ohio-8295, ¶ 30; *State v. Jordan*, 2023-Ohio-3800, ¶ 13.

{¶46} "'[S]ufficiency is a test of adequacy.'" *In re Z.C.* at ¶ 13, *quoting State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "When applying a sufficiency-of-the-evidence standard, a court of appeals should affirm a trial court when the evidence is legally sufficient to support the [factfinder's determination] as a matter of law." (Cleaned up.) *In re Z.C.* at ¶ 13.

{¶47} The Supreme Court of Ohio held that where the degree of proof required to sustain an issue must be "clear and convincing," means "[t]he measures or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104 (1986); *Accord, In re: Z.C.*, 2023-Ohio-4703, ¶7. A court of appeals will examine the record to determine whether the trial court had sufficient evidence before it by which the trial court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been

established. 2023-Ohio-4703, ¶8; *In re Adkins*, 2006-Ohio-431, ¶17 (5th Dist.); *In re L.A.,* 2024-Ohio-3436, ¶59 (5th Dist.).

*Manifest Weight*

{¶48}   The term **"manifest weight of the evidence"** relates to persuasion.  *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19.  It concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), *superseded by constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 n.4 (1997)*; *State v. Martin*, 2022-Ohio-4175, ¶ 26.

{¶49}   When reviewing the manifest weight of the evidence, the question is whether the jury clearly lost its way in resolving conflicts, resulting in a manifest miscarriage of justice, even if the evidence is legally sufficient.  *Thompkins*, 78 Ohio St.3d at 386 - 387; *State v. Issa*, 93 Ohio St.3d 49, 67 (2001).  In this role, an appellate court acts as a "thirteenth juror" and may disagree with the jury's assessment of conflicting testimony.  *State v. Jordan*, 2023-Ohio-3800; *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982); *State v. Wilson*, 2007-Ohio-2202, ¶ 25.

{¶50}   Appellate courts traditionally presume the jury's assessment is correct, given its ability to observe witnesses' demeanor, gestures, and tone, all critical factors in evaluating credibility.   *Eastley*, 2012-Ohio-2179, ¶ 21; *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶51}   However, the Eighth District Court of Appeals recently noted in *State v. Reillo*, 2024-Ohio-3307, ¶ 20, *appeal allowed,* 2025-Ohio-705 (Table), that *Eastley* arguably extended this presumption from civil to criminal cases.  *Id.* at ¶ 27.  The court

cautioned that deferring to credibility determinations would collapse the distinction between sufficiency and weight of the evidence. *Reillo* at ¶ 23. It observed that if credibility findings were insulated from review, there would be little reason to raise a manifest-weight challenge. *Id. See also State v. Butler*, 2024-Ohio-5879, ¶ 27 (5th Dist.). Thus, acting as a thirteenth juror, the appellate court reviews credibility de novo. *Id.*

{¶52} A manifest-weight claim succeeds only in "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

### Requirements for Permanent Custody Awards

{¶53} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶54} Following the hearing, R.C. 2151.414(B)(1) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies

for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶55} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**Parental Placement within a Reasonable Time– R.C. 2151.414(B)(1)(a)**

{¶56} The trial court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E). The statute also indicates that if the court makes a finding under R.C. 2151.414(E)(1) - (15), see below, the trial court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time, or should not be placed with a parent, upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. *See In re William S.*, 75 Ohio St.3d 95 (1996); *In re Hurlow*, 1997 WL 701328 (4th Dist. Sept. 21, 1998); *In re Butcher,* 1991 WL 62145 (4th Dist. Apr. 10, 1991).

{¶57} R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the

Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

…

(16) Any other factor the court considers relevant.

{¶58} The trial court found that the ACDJFS had made reasonable efforts to prevent the removal, to eliminate the continued removal, or to make it possible for A.S. to return safely to Mother's home. The record supports the court's finding that Mother has not shown consistent sustained progress to have A.S. returned to her custody.

{¶59} It does not appear that Mother has been able to apply any behavioral changes that she has attempted to learn. Despite being offered numerous services, Mother was unable or unwilling to mitigate the concerns that led to the A.S.'s removal. As set forth in our *Facts and Procedural History, supra*, we find there was sufficient and substantial competent evidence Mother failed to remedy the problems which initially caused the removal of A.S. from her home.

{¶60} Despite being diagnosed with significant mental health problems, Mother rejected the help she was offered. The record clearly shows that Mother would prefer to self-medicate with THC rather than remain on medications prescribed by her health care professionals. Mother has rejected all attempts to engage in counseling and other programs to learn to overcome her problems and live a drug free life.

{¶61} The ultimate question under R.C. 2151.414(A)(1) is whether the parent has substantially remedied the conditions that caused the child's removal. A parent can successfully complete the terms of a case plan yet not substantially remedy the conditions that caused the children to be removed—the case plan is simply a means to a goal, but not the goal itself. Hence, the courts have held that the successful completion of case plan requirements does not preclude a grant of permanent custody to a social services agency. *In re J.L.,* 2004-Ohio-6024, ¶ 20 (8th Dist.); *In re Mraz*, 2002-Ohio-7278 (12th

Dist.). In the case of *In re: Summerfield*, 2005-Ohio-5523 (5th Dist.), this Court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time. *Accord, In re: K.C.*, 2024-Ohio-2081, ¶56 (10th Dist.).

{¶62} Mother loves and is bonded with A.S. However, the evidence demonstrates that Mother made very few successful efforts on the case plan. On that point, the evidence further demonstrates that any improvement that Mother has made in her life is tentative and, perhaps, temporary, and that she is at risk of relapse. The trial court found that Mother is not able to be a successful parent to the child.

{¶63} Mother has made no progress on the case plan; continues to deny she has a substance abuse problem and refuses to deal with the mental health issues caused by the trauma in her own childhood. Nothing in the record indicates that, given more time, Mother will make a sincere and successful effort to remedy the problems.

{¶64} We find there is competent and credible evidence, which, if believed, would convince the average mind that A.S. cannot be placed with Mother within a reasonable time or should not be placed with Mother.

**The Best Interest of the Child**

{¶65} An agency that seeks permanent custody of a child bears the burden of proving by clear and convincing evidence that the grant of permanent custody is in the child's best interest. *In re B.C.,* 141 Ohio St.3d 55, 2014-Ohio-4558, ¶ 26.

{¶66} R.C. 2151.414(D)(1) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the

permanent custody motion. These factors include but are not limited to: (a) the interrelationship of the child with others; (b) the wishes of the child; (c) the custodial history of the child; (d) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (e) whether any of the factors in divisions (E)(7) to (11) apply.

{¶67}  The factors in R.C. 2151.414(E)(7) through (11), which are referred to in R.C. 2151.414(D)(1)(e), involve a parent having been convicted of, or pled guilty to, specific criminal offenses against the child, the child's sibling or another child who lived in the parent's household; a parent withholding medical treatment or food from the child; a parent repeatedly placing the child at substantial risk of harm because of alcohol or drug abuse; a parent abandoning the child; and a parent having had parental rights involuntarily terminated as to a sibling of the child.

{¶68}  No one element is given greater weight or heightened significance. *In re C.F.,* 2007-Ohio-1104.  R.C. 2151.414(D)(1) does not require a juvenile court to make specific findings regarding each best-interest factor listed in R.C. 2151.414(D)(1) or to include in its decision or judgment entry a written discussion of each of those factors. *In re: A.M.,* 2020-Ohio-5102, ¶33.

{¶69}  A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security.  We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives

of the parties concerned." *In re Mauzy Children,* 2000 WL 1700073 (5th Dist. Nov. 13, 2000), *citing in re Awkal,* 95 Ohio App.3d 309, 316 (8th Dist. 1994).

{¶70} In the case at bar, the ACDJFS investigated potential placement with relatives and found no suitable relative. Considering the many obstacles in Mother's life, the trial court found A.S.'s need for a legally secure placement cannot be achieved without permanent custody. Nothing in the record before us demonstrates that more time, or a return of custody to the Mother, will in any way benefit the child.

{¶71} Here, the trial court concluded A.S.'s need for legally secure placement could not be achieved without awarding permanent custody to the ACDJFS. Upon review, the record supports the trial court's finding that granting the motion for permanent custody is in the child's best interest.

{¶72} In short, the trial court's judgment entry demonstrates that the court satisfied its statutory duty to consider the best interest factors set out in R.C. 2151.414(D)(1)(a) through (e).

### Conclusion

{¶73} For these reasons, we find that the trial court correctly found that Mother failed to remedy the issues that caused the initial removal, and, therefore, A.S. could not be placed with her within a reasonable time or should not be placed with her. The trial court's decision was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶74} We further find that the trial court's decision that permanent custody to the ACDJFS was in A.S.'s best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶75}  Because the evidence in the record supports the trial court's judgment, we overrule Appellant-Mother's assignment of error and affirm the decision of the Ashland County Court of Common Pleas, Juvenile Division.

By Popham, J. and

King.J., concur;

Hoffman, P. J., concurs

separately

*Hoffman, P.J., concurring*

{¶76}     I concur in the majority's thorough and well written opinion with one single exception.

The majority holds an appellate court reviews credibility de novo under a manifest weight of evidence argument. (Maj. Op. at ¶51). I do not believe that is the appropriate standard of review. When reviewing issues de novo (e.g., statutes, summary judgments, contracts, etc.), no deference need be given to the trial court's decision. The majority opinion recognizes appellate courts traditionally presume the trier-of-fact's assessment of conflicting testimony is correct, given its ability to observe witnesses' demeanor, gestures and tone as critical factors in evaluating credibility. Yet it holds review of credibility is de novo, which I maintain is non-deferential. This seems inherently contradictory to me and I remain unpersuaded such is the appropriate standard of review.